## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01377-SCT

*WISCONSIN AVENUE PROPERTIES, INC.*

*v.*

*FIRST CHURCH OF THE NAZARENE OF VICKSBURG*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/1999 |
| TRIAL JUDGE: | HON. DONALD B. PATTERSON |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. SESSUMS |
| ATTORNEY FOR APPELLEE: | J. FREDERICK AHREND |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 10/12/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/2/2000 |

**BEFORE PITTMAN, P.J., WALLER AND COBB, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This is an appeal by Wisconsin Avenue Properties, Inc. from a judgment entered on August 6, 1999, by the Warren County Chancery Court dismissing its cross-complaint and mandatorily enjoining it to remove a driveway built upon the property of First Church of the Nazarene of Vicksburg and permanently enjoining it from trespassing on that property.

### STATEMENT OF THE FACTS

¶2. The facts in this case are uncontested. On July 9, 1997, First Church of the Nazarene of Vicksburg ("Nazarene") filed its complaint for preliminary and permanent injunction, and on July 31, 1997, Wisconsin Avenue Properties, Inc. ("Properties, Inc.") filed its answer and counterclaim to confirm title and for damages.

¶3. Prior to June 26, 1987, Nazarene, Properties, Inc., and Manor Estates, Inc. ("Manor Estates") owned adjacent lands west of Wisconsin Avenue in Section 28, Township 16 North, Range 3 East, Warren County. As noted in the trial judge's findings of fact the following pertinent conveyances were executed on June 26, 1987:

> 1) Correction warranty deed from Manor Estates to Nazarene conveying fee simple title to 10 acres and a non-exclusive easement and right of way for the use in common with others for the purpose of ingress and egress over a strip of land on the east side of the 10 acres.

2) Warranty deed from Wisconsin Avenue Development Corp. (hereinafter "Development Corp.") to Nazarene conveying fee simple title to a strip of land 50 feet in width which joins Nazarene's easement from Manor Estates on its east side and runs east to Wisconsin Avenue. The combination of the Manor Estates easement and this fee strip give Nazarene ingress and egress to its 10 acres from Wisconsin Avenue.

3) Conveyance from Nazarene to Manor Estates of "a non-exclusive easement and right of way, for the use in common with others, including subsequent grantees of the grantee herein, for the purpose of ingress and egress to adjacent lands including, but not limited to, those now owned by the said Manor Estates, Inc., over and across," the 50' strip conveyed to Nazarene by Development Corp. as set out in (2) above.

4) Warranty deed from Development Corp. to Harold M. May conveying fee simple title to 2.02 acres bounded on the east by Wisconsin Avenue and the south by the 50' strip conveyed by Development Corp. to Nazarene.

On July 8, 1987, the following conveyance took place:

5) Conveyance from Manor Estates to Harold May of "a non-exclusive easement and right of way, for the use in common with others, for the purpose of ingress and egress to adjacent lands now owned or which may be subsequently acquired by the grantee and his successors and assigns, over and across" the 50' strip owned in fee simple by Nazarene.

6) Subsequent mesne conveyances vested Properties, Inc. with fee simple title to 1.62 acres bounded on the south by the 50' strip owned by Nazarene and bounded on the east by 250' of frontage on Wisconsin Avenue. These mesne conveyances included grants of the easement over Nazarene's 50' strip.

The land owned by Properties, Inc. was not previously owned by Manor Estates. Only the granting of an easement can be traced to Manor Estates which itself was granted an easement by Nazarene.

¶4. Nazarene built and maintains a driveway over the 50' strip. Properties, Inc., owns land adjacent to the driveway maintained by Nazarene. The land owned by Properties, Inc., fronts on and has access to Wisconsin Avenue via a driveway from this land. The land owned by Properties, Inc., and bounded on the south by Nazarene's 50' strip is used as a parking lot. This case ensued when Properties, Inc., built a driveway from its parking lot to Nazarene's 50' strip. Nazarene installed a gate which Properties, Inc. removed.

¶5. After a thorough review, the chancery court enjoined Properties, Inc., and dismissed its counterclaim on August 6, 1999. On August 18, 1999, Properties, Inc., timely filed its notice of appeal.

<u>**STATEMENT OF THE ISSUES**</u>

**I. THE LOWER COURT ERRED IN FINDING THAT AS A MATTER OF LAW THAT THE CONVEYANCE OF JUNE 26, 1987, FROM NAZARENE TO MANOR ESTATES WAS AN EASEMENT APPURTENANT.**

**II. THE LOWER COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE CONVEYANCE OF JUNE 26, 1987, FROM NAZARENE TO MANOR ESTATES DID NOT TRANSFER AN EASEMENT FOR INGRESS AND EGRESS WITHOUT A TRANSFER OF ANY INTEREST IN MANOR ESTATES' LAND.**

**III. THE LOWER COURT ERRED IN RULING THAT THE EASEMENT CONVEYANCE FROM MANOR ESTATES TO HAROLD MAY DID NOT TRANSFER AN EASEMENT FOR INGRESS AND EGRESS TO MAY BECAUSE THE TRANSFER WAS NOT LINKED TO ANY INTEREST IN MANOR ESTATES' LAND.**

**IV. THE LOWER COURT ERRED IN RULING THAT AN APPURTENANT EASEMENT CANNOT BE SEPARATED FROM OR TRANSFERRED INDEPENDENTLY OF LAND TO WHICH IT IS APPURTENANT.**

**V. THE LOWER COURT ERRED IN RULING THAT MANOR ESTATES WAS WITHOUT POWER TO TRANSFER AND/OR EXPAND THE USE OF THE EASEMENT TO BENEFIT LAND FORMERLY OWNED BY MAY AND NOW OWNED BY PROPERTIES, INC.**

**VI. THE LOWER COURT ERRED IN MANDATORILY ENJOINING PROPERTIES, INC. TO REMOVE THE DRIVEWAY BUILT UPON THE FIFTY (50) FOOT STRIP OF PROPERTY IN QUESTION.**

**VII. THE LOWER COURT ERRED IN PERMANENTLY ENJOINING PROPERTIES, INC. FROM UTILIZING THE FIFTY (50) FOOT STRIP OF PROPERTY IN QUESTION.**

**VIII. THE LOWER COURT ERRED IN DISMISSING THE COUNTER-CLAIM OF PROPERTIES, INC.**

**IX. THE LOWER COURT ERRED IN ASSESSING COSTS TO PROPERTIES, INC.**

**X. THE LOWER COURT ERRED IN GRANTING THE RELIEF REQUESTED IN THE COMPLAINT OF NAZARENE.**

<u>**DISCUSSION OF LAW**</u>

¶6. As noted, Properties, Inc. lists ten issues upon appeal. The brief of Properties, Inc., however, addresses only the first issue individually, stating that the trial court erred in finding the easement to be appurtenant. Properties, Inc. discusses easements appurtenant versus easements in gross, but does so in descriptive terms only, making no argument that the easement in question was in gross.

¶7. Properties, Inc., immediately following the discussion of easements in gross, makes the argument that the land it owns adjacent to the easement is the dominant tenement, essentially arguing against an easement in gross. Properties, Inc., goes so far as to declare incorrectly that the "lower court erroneously ruled that there were no dominant and servient parcels." Actually, the trial court found that Manor Estates possessed the dominant tenement and that Nazarene's 50' strip was the servient tenement upon which the easement acted.

¶8. Properties, Inc., essentially addresses two issues : 1) whether all adjacent lands are intended as the dominant tenement; and, in the alternative, 2) whether an easement appurtenant is transferable apart from the dominant tenement.

## I. WHETHER ALL ADJACENT LANDS ARE INTENDED AS THE DOMINANT TENEMENT.

¶9. Properties, Inc., argues that the following language created an easement appurtenant that defined all adjacent lands as the dominant tenement:

> NAZARENE . . . [does] hereby grant and convey unto MANOR ESTATES . . . a non-exclusive easement and right of way, for the use in common with others, including subsequent Grantees of the Grantee herein, for the purpose of ingress and egress to adjacent lands including, but not limited to those now owned by the said Manor Estates, Incorporated, over and across the following described tract or parcel of land . . . .

Properties, Inc.'s, argument fails in the first instance as it was not a party, nor an intended party, of the original transaction. The grant is clearly from Nazarene to Manor Estates.

¶10. "Strangers to the instrument creating an easement over real estate for a specific purpose cannot interfere with the right of the owner of the land to exercise full dominion over his property." ***Riddell v. Ewell***, 929 P.2d 30, 32 (Colo. Ct. App. 1996)(quoting ***Title Guar. Co. v. Harmer***, 163 Colo. 278, 281, 430 P.2d 78, 79-80 (1967)). Furthermore, by granting to one party an easement for its specific use, no rights are acquired by others not a party to the instrument creating the easement. ***Title Guar.***, 430 P.2d at 80. This tenet is so fundamental that Mississippi has never needed to address the issue. Properties, Inc., cannot assert rights based upon a transaction to which it was not a party, nor intended to be a party.

¶11. Neither does the body of the grant aid Properties, Inc.'s, argument. The language granting a "non-exclusive easement . . . for the use in common with others" does not mean that Nazarene intended to grant an easement to all adjacent land owners. The grant clearly specifies Manor Estates as the grantee, and the non-exclusive language is needed in order for Nazarene to maintain its rights as the servient parcel owner. Roger A. Cunningham et al, *The Law of Property* § 8.1, at 436 & § 8.11, at 463 (1984). An exclusive easement would grant Manor Estates superior rights, even to the exclusion of Nazarene. *Id.*

¶12. The phrase "to adjacent lands including, but not limited to those now owned by the said Manor Estates" fails to further Properties, Inc.'s, argument. Read as a whole, or in part, it is clear that Nazarene intended to grant Manor Estates an easement to all adjacent lands owned or adjacent lands acquired by Manor Estates in the future. The transaction was strictly between Nazarene as the grantor and Manor Estates as the grantee, involving neither Properties, Inc., as a party or land owned by Properties, Inc.

¶13. Properties, Inc.'s, argument exhibits a misunderstanding of easement law. It is true that an easement concerns the land. An easement appurtenant burdens the servient parcel and benefits the dominant parcel. The transaction and the rights conferred, however, are between parties or entities. Properties, Inc., was clearly not a party to the transaction granting an easement by Nazarene to Manor Estates. Consequently, this issue has no merit.

## II. WHETHER AN EASEMENT APPURTENANT IS TRANSFERABLE APART FROM THE DOMINANT TENEMENT.

¶14. Properties, Inc., argues, in the alternative, that Manor Estates was granted the authority to transfer the easement apart from the dominant tenement through the grant to Manor Estates of a "non-exclusive easement . . . including subsequent Grantees of the Grantee herein." This argument is contrary to both the plain meaning and language of the grant and the overwhelming weight of authority. The language of the grant merely puts in words what is implied concerning easements appurtenant: easements appurtenant run with the land, the burden or benefit transferring with the dominant or servient tenement.

¶15. As noted by Nazarene, the authority is clear on this issue. "An easement appurtenant cannot exist apart from a dominant tenement and can be transferred only by transfer of the dominant property. Such a servitude may not be transferred separately from the land to which it is appurtenant, and an instrument purporting to transfer such an interest is ineffective." J. Bruce & J. Ely, *The Law of Easements and Licences in Land* § 9.01[2]. *See also* 25 Am. Jur.2d *Easements and Licences* § 103 (1996) ("an appurtenant easement cannot be separated from, or transferred independently of, the land to which it is appurtenant"); 28A C.J.S. *Easements* § 110 ( 1996) ("an easement appurtenant to land cannot be severed from the land to which it is appurtenant and made the subject of a separate grant, but can be conveyed only by a conveyance of such land").

¶16. Because such law is so clear, it is seldom the subject of litigation. In fact, every state which has addressed the issue has found that an easement appurtenant cannot be transferred apart from the dominant tenement, and any attempt to do so must fail. Properties, Inc. defeats its own argument that easements appurtenant are transferable apart from the dominant tenement:

> There is no dispute between the parties that an easement appurtenant is freely assignable. Browder v. Graham, [204 Miss. 773, 38 So.2d 188 (1948)]. Furthermore, even an easement acquired by prescription becomes appurtenant to the property to which it attaches and will pass by a grant or deed of the fee simple property to which it pertains even without description of the prescriptive easement, McIntyre v. Harvey, 128 So. 572 (Miss. 1930) and even a prescriptive easement runs with the land. Logan v. McGee, 320 So.2d 792.

A review of these cases shows that Properties, Inc. is correct in that an easement appurtenant runs with the land and transfers with the land upon grant or conveyance of such land in fee simple. Easements appurtenant are not transferable apart from the dominant tenement.

¶17. Manor Estates did not convey any portion of the dominant parcel to Harold May (May's parcel under consideration was conveyed by Development Corp., who also did not receive land from Manor Estates). Consequently, May did not convey a dominant parcel to Properties, Inc. Although Manor Estates executed a deed purporting to transfer an easement to May, the easement was appurtenant making this transfer invalid. Properties, Inc. possesses neither a dominant tenement nor an easement over Nazarene's adjacent fifty foot strip of land.

## CONCLUSION

¶18. For these reasons, the judgment of the Warren County Chancery Court is affirmed.

¶19. **AFFIRMED.**

**PRATHER, C.J., BANKS, P.J., McRAE, MILLS, WALLER, COBB AND DIAZ, JJ.,**

**CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**SMITH, JUSTICE, DISSENTING**:

¶20. The easement from First Church of the Nazarene of Vicksburg to Manor Estates dated Junes 26, 1987, provides that the church grant unto Manor Estates a (1) "***non-exclusive easement*** and right of way, for the (2) *use in common with others*, (3) *including subsequent Grantees of the Grantee herein*, for the purpose of ingress and egress to (4) *adjacent lands* including, but (5) *not limited to those now owned by the said Manor Estates, Incorporated*, over and across the following described tract or parcel of land. . . ." (emphasis added). In my view, the majority errs in concluding that the quoted language did not create an easement appurtenant that defined all adjacent lands as the dominant tenement. Therefore, I respectfully dissent.

¶21. The intention of the parties is demonstrated by the clear language of the easement itself. It plainly specifies that it is non-exclusive. That is to say, it is not limited only to Manor Estates, Incorporated and therefore is not private. Moreover, it states that the easement is to be used by Manor Estates in common with others and is thus not limited to Manor Estates. Additionally, the easement specifically provides that the easement can be used in common with subsequent grantees of Manor Estates, meaning any person or entity to whom Manor Estates conveys such rights. This "grant" can only be of the fifty (50) foot strip since the conveyance contained only one description, that being of the easement itself. The easement does not speak or describe any other parcel of land. Also, the ingress and egress is to adjacent lands, meaning lands adjacent to the easement. Certainly Wisconsin Avenue's land is adjacent since it directly abuts the easement. Furthermore, the ingress and egress is to adjacent lands, but these adjacent lands are not limited to lands then owned by Manor Estates. From an analysis of the language of the easement, the terminology contained in the easement is directly applicable to the land located directly adjacent and north of the easement formerly owned by Harold M. May and now owned by Properties, Inc.

¶22. The majority writes, "Strangers to the instrument creating an easement over real estate for a specific purpose cannot interfere with the right of the owner of the land to exercise full dominion over his property." ***Riddell v. Ewell***, 929 P.2d 30, 32 (Colo. Ct. App. 1996) (quoting ***Title Guar. Co. v. Harmer***, 163 Colo. 278, 281, 430 P.2d 78, 79-80 (1967)). First, it must be noted that the majority relies on case law which is not controlling within this jurisdiction. Indeed, the majority even writes that Mississippi has never addressed this issue. However, even arguing that this state has adopted ***Riddell***, the parties involved cannot be said to be "strangers to the instrument."

¶23. On the very same date as the creation of this easement, the date a previous error in the location of the easement was being corrected, May acquired the property north and adjacent to the easement. May was a stockholder of Wisconsin Avenue Development Corporation when it conveyed the fee parcel to May individually and when Wisconsin Avenue Development Corporation conveyed the easement parcel to Manor Estates. The deed whereby Harold M. May acquired the fee simple title to the property north of the easement was notarized by Charla J. Lyons and the Clerk's note states the document is to be returned to "WBS&B." The easement grant is likewise notarized by Charla J. Lyons on the same date and is likewise to be returned to WBS&B. WBS&B is Wheeless, Beanland, Shappley & Bailess, attorneys at law.

¶24. The conveyances were recorded in the Chancery Clerk's office at 4:33 and 4:35 on July 8, 1987. The conveyance of the easement in question by Manor Estates to Harold M. May was signed and delivered on July 8, 1987.

¶25. Obviously, both conveyances were prepared by the same law firm, notarized by the same notary, and were signed, delivered, and recorded on the same date in the Clerk's office within two (2) minutes of each other. It would be inconceivable to say that they were not prepared in conjunction with each other.

¶26. On July 8, 1987, Harold M. May owned both the dominant estate to the north of the easement and also an interest in the easement itself. By direct mense conveyance, both the dominant feehold northern parcel and the easement in question were conveyed to Wisconsin Avenue. Consequently, May did convey a dominant tenement to Properties, Inc.

¶27. It is my view that the language of the easement created an easement appurtenant that defined all adjacent lands as the dominant tenement. Therefore, I respectfully dissent.